1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MANUEL GOMEZ LOPEZ,

11             Petitioner,              No. CIV S-03-0543 JAM DAD P

12        vs.

13   D. L. RUNNELS, et al.,

14             Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16             Petitioner is a state prisoner proceeding pro se with an amended application for a

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of

18   conviction entered against him in the Sacramento County Superior Court in 2000 on two counts

19   of making terrorist threats in violation of California Penal Code § 422.  He seeks relief on the

20   grounds that: (1) the evidence was insufficient to support his conviction on one of the counts

21   against him; (2) the trial court violated his constitutional rights by limiting his efforts to impeach

22   and cross-examine the complaining witness; (3) his right to due process was violated when the

23   trial court allowed the prosecutor to introduce evidence of petitioner's prior acts of misconduct;

24   and (4) his pretrial, trial and appellate counsel all rendered ineffective assistance.  Upon careful

25   consideration of the record and the applicable law, the undersigned will recommend that

26   petitioner's application for habeas corpus relief be denied.

1

## PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Manual Gomez Lopez of two counts of making criminal threats (Pen. Code, § 422 – count one as to victim Kristin Seishas (Kristin) and count two as to victim Theresa Maldonado (Theresa); undesignated section references are to the Penal Code) and found true allegations that he had been convicted of four strikes within the meaning of sections 667, subds. (b) - (i) and 1170.12.

\* \* \*

In November 1999, 21-year-old Kristin worked as a server at a Sacramento restaurant where defendant worked as a cook.  The general manager was Theresa.  Defendant told Kristin he had served a prison term for attempted murder, for stabbing someone.  On November 11, 1999, defendant acted "unprofessional" according to Kristin.  He banged down plates, refused to fix customers' orders and seemed angry.  Defendant had acted this way in the past with other servers.  Kristin informed Theresa and explained that she no longer wanted to work on the same shift as defendant.

Theresa discussed the incident with defendant.  He admitted throwing plates up on the pass-through at Kristin.  Theresa gave defendant a "write-up" and suspended him for the night.  Defendant became angry, started to talk rapidly, "spitting," and slammed his fists on the desk, telling Theresa he wanted to "punch" her in the face.  Theresa was frightened and called for assistance.  Defendant told her she did not need assistance.  Later, during a conversation between defendant and the assistant manager, Theresa overheard defendant say that "she" needed to watch out and that he was going to "get her."  Theresa was not sure whether defendant meant her, or Kristin.

Defendant called in sick a few days later at which time he told Theresa he had served a prison term for killing someone and asked Theresa if she had any children.  She replied, "Yes."

On November 16, 1999, Kristin again worked with defendant and he asked her about her report to Theresa.  Kristin explained she had told Theresa that defendant had been acting unprofessionally and that she no longer wanted to work with him.  Defendant angrily threatened Kristin, telling her to "watch [her] back", that he "was going to get [her]" and that she was "done for."  They stood a few feet apart and he looked directly at her.  She responded that the

---

[1]  The following summary is drawn from the April 30, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-6, lodged in this court on August 10, 2005.

2

conversation was over and walked away.  When Kristen picked up her orders, defendant threatened her again, saying the same things several times, actually "chanting" his threats.  The threats continued for about 20 minutes.  Kristen was afraid and believed defendant planned to hurt or possibly kill her; she was aware he knew her work schedule.  The assistant manager then ordered defendant to leave.  As defendant was clocking out, he came face to face with Kristin and threatened her again, saying the same things.

Later on November 16, defendant called Theresa and asked what was going to happen to him.  Theresa said she did not know what he was talking about, but, while she was talking to defendant, she noted she had a call waiting and switched to that call.  Kristin was on the line, crying and hysterical, and explained that defendant had threatened her life and had been sent home by the assistant manager.  While Theresa was talking to Kristin, Theresa answered her call waiting and it was defendant.  He was angry and worried about losing his job, but Theresa said she could not discuss it.  Defendant then said he would slit Theresa's and Kristin's throats if he was fired, that it was second nature to him and he would not hesitate to do it.  He then hung up the phone.

To protect her, Theresa told Kristin about defendant's threat to slit their throat, and Kristin became even more fearful.  Theresa believed defendant would do what he had threatened to do and feared for her safety.  Thinking it was her duty to investigate the incident, Theresa went to the restaurant but had her uncle and son-in-law watch her car as she got into her car to go.  Theresa feared for her safety even at the time she testified at defendant's trial.

On the evening of November 17, Theresa fired defendant, but took the precaution of asking the police to be present when she did so.  Defendant took his termination check and stated calmly that she needed to watch her children.

Theresa immediately changed her phone number and arranged to have her children driven to school every day.  She warned the school and her children about defendant's threats.  Theresa switched restaurants a few weeks later, because she no longer felt safe.

About the time defendant was fired, Kristin learned that her personnel file at the restaurant was missing.

After the threats, Kristin changed her routine.  She no longer worked alone at the restaurant, had someone escort her to her car, drove her father's car, which was more reliable, and she carried a cell phone.  "Officers" were always at the restaurant when she worked.  Kristin obtained a restraining order against defendant.  A few weeks after defendant's threats, she quit working at the

restaurant, because she no longer felt safe.  She also moved and changed her phone number.

Defendant testified.  He admitted having sustained a conviction for robbery and three prior felony convictions of moral turpitude in 1990.  He denied having been convicted of murder and denied telling any coworkers, or managers, that he had.

In October 1999, defendant began working as a cook at the restaurant.  At no time prior to November had Theresa counseled him for bad behavior.  While checking his food drawers on November 11, Kristen banged on the counter and demanded to know if he was "going to be like that all night."  He told her to leave him alone.  They did not speak to one another for the rest of the shift.  Several days later, defendant was summoned to Theresa's office where she explained he would be written up and placed on probation.  Defendant was upset, because Theresa had not asked for his explanation, but he was not angry.  When he worked with Kristin later that evening, he asked Kristin what she had told Theresa.  He denied threatening Kristin and left early to catch a bus.  As he clocked out, he told Kristin, "what goes around, comes around.  I'll get my chance."  The next day he was fired.  He explained that he had helped Kristin by busing tables and taking food orders from regular customers.  He denied his telephone call to Theresa.

Defendant specifically denied he had made threats to Kristin, or Theresa.  He claimed he was a "nice guy."  He denied having any problems with any of the servers and claimed he got along with everybody, including all of his coworkers.

In rebuttal, defendant's former coworker at another restaurant claimed that defendant had sent a note demanding $20, which defendant believed the coworker owed, and threatened that, if he did not pay up, he "would be hurt really bad."  The coworker believed defendant meant it.

## ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

1    Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

2    corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

3    (1972).

4          This action is governed by the Antiterrorism and Effective Death Penalty Act of

5    1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

6    1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

7    habeas corpus relief:

8                An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
9            not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
10           claim -

11                (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
12           determined by the Supreme Court of the United States; or

13                (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
14           State court proceeding.

15   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

16   (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

17         The court looks to the last reasoned state court decision as the basis for the state

18   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

19   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

20   federal habeas court independently reviews the record to determine whether habeas corpus relief

21   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

22   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

23   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

24   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

25   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

26   1167 (9th Cir. 2002).

1   II.  Petitioner's Claims

2        A.  Sufficiency of the Evidence

3            Petitioner's first claim is that the evidence introduced at his trial was insufficient

4   to support his conviction on count one in which he was charged with making terrorist threats

5   against Kristin Seishas (hereinafter "Kristen").  (Am. Pet. at 16.)  He argues that his statements to

6   Kristen did not "rise to the level of a terrorist threat."  Petitioner explains,

7            Given the context of [petitioner's] threats, the reasonable
             interpretation is that in his opinion, Ms. Seishas struck him a low
8            blow by complaining to management and trying to have him either
             fired, or curtailing his opportunity to work, and that he threatened,
9            that she could expect him to retaliate in kind in order to get even.
             To interpret in that context words such as "going to get you" and
10           "watch your back" as threats to kill or inflict physical injury is
             absurd and borders on hysteria.

11

12  (Id. at 19.)  Petitioner argues, "an idiosyncratic reaction to words does not invest them with a

13  meaning or intention that they do not have."  (Id.)  He contends that Kristin's fear was not

14  "reasonable."  (Id. at 23.)

15           The California Court of Appeal rejected petitioner's arguments regarding the

16  sufficiency of the evidence, reasoning as follows:

17           Section 422 provides in relevant part:  "Any person who willfully
             threatens to commit a crime which will result in death or great
18           bodily injury to another person, with the specific intent that the
             statement, made verbally, in writing, or by means of an electronic
19           communication device, is to be taken as a threat, even if there is no
             intent of actually carrying it out, which, on its face  and under the
20           circumstances in which it is made, is so unequivocal,
             unconditional, immediate, and specific as to convey to the person
21           threatened, a gravity of purpose and an immediate prospect of
             execution of the threat, and thereby causes that person reasonably
22           to be in sustained fear for his or her own safety or for his or her
             immediate family's safety, shall be punished by imprisonment in
23           the county jail not to exceed one year, or by imprisonment in the
             state prison."
24
             To find that defendant made a criminal threat in violation of
25           section 422, each of the following elements must be proved:

26  /////

6

"1.  A person willfully threatened to commit a crime which if committed, would result in death or great bodily injury to another person;

"2.  The person who made the threat did so with the specific intent that the statement be taken as a threat;

"3.  The threat was contained in a statement that was made verbally, in writing, or by means of an electronic communication device;

"4.  The threatening statement on its face, and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; and

"5.  The threatening statement caused the other person reasonably to be in sustained fear [for [his] [or] [her] own safety] [or] [for [his] [or] [her] immediate family safety]."  (See CALJIC No. 9.94 (1999 rev.) (6th ed. 1999).)

Here, as evidenced by closing argument, the prosecution sought to prove that defendant made a criminal threat to Kristin either when he stated, "You better watch your back, I'm going to get you. You're done for," or when he conveyed a criminal threat to Kristin through Theresa by stating," "I'm going to slit your throat."  The jury was instructed that it must agree that defendant committed the same act.  (CALJIC No. 17.01.)  In conjunction with surrounding circumstances, either statement may constitute a violation of section 422 (a criminal threat).

The language of Penal Code section 422 requires the threat to be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat . . . .'  (Italics added.) . . . The use of the word 'so' indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.  The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim."  (People v. Stanfield (1995) 32 Cal.App.4th 1152, 1157-1158; italics omitted; see also People v. Bolin (1998) 18 Cal.4th 297, 339-340.)

Defendant's words, "You better watch your back, I'm going to get you.  You're done for," could have had more than one meaning, but defendant had previously told Kristin he had either committed attempted murder, or had stabbed someone.  When defendant made

7

his initial threats, he did so not once but several times, chanting his threats over a period of 20 minutes.  Taking these acts into consideration along with the remainder of the circumstances surrounding defendant's words, Kristin reasonably could have taken them as a threat of death, or of great bodily injury.

Defendant argues that the fact that he later conveyed a threat to slit Kristin's throat should not be considered in connection with his initial threats.  We disagree.  Defendant's subsequent threat to slit Kristin's throat, if he was fired, is a circumstance that may be used to evaluate whether defendant intended his initial words ("to get [her]," that she was "done for" and that she should "watch [her] back") to be taken as a threat.  (citations omitted.)

Defendant's threat to slit Theresa's and Kristen's throats, if he was fired, was in itself a criminal threat.  Although conditional, it was highly likely defendant knew he would be fired, because he was already on probation.  "Language creating an apparent condition cannot save the threatener from conviction when the condition is illusory, given the reality of the circumstances surrounding the threat.  A seemingly conditional threat contingent on an act highly likely to occur may convey to the victim a gravity of purpose and immediate prospect of execution."  (citation omitted.)

Moreover, "[t]he kind of threat contemplated by section 422 may as readily be conveyed by the threatener through a third party as personally to the intended victim.  Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated.  Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed."  (In re David L. (1991) 234 Cal.App.3d 1655, 1659.)  Defendant communicated his threat to slit Kristin's throat to Theresa, Kristin's boss, who defendant knew had been contacted by Kristin about his plate banging.  It can be inferred that he knew Theresa would be contacted by Kristen about his threats to get her, that she should watch her back and that she was done for.  Thus, it can be inferred defendant intended Theresa to act as intermediary to convey the throat-slitting threat to Kristin.  (Id. at p. 1659.)  And Theresa did so.

As a result of defendant's threats, Kristin changed her routine.  She never worked alone, had others escort her to her car, borrowed her father's car, because it was more reliable, and she carried a cell phone.  When she worked at the restaurant, officers were present.  She also obtained a restraining order against defendant.  She later quit the restaurant, moved and changed her phone number.  Sufficient evidence supports the conclusion that either defendant's threats to watch her back, that he would get her and that she was done for, or his threat to slit her throat, caused Kristin to be in sustained fear for her safety.  (See People v. Allen (1995) 33 Cal.App.4th 1149, 1156 ["sustained" fear means a period of time

8

1
2
3
4
5

> that extends beyond "momentary, fleeting, or transitory"].)  The
> jury could reasonably conclude that either defendant's threats ro
> "get [her]," "watch [her] back" and that she was "done for," or his
> threat to slit her throat conveyed to Kristin "a gravity of purpose
> and an immediate prospect of execution . . . ." (People v. Stanfield
> supra, 32 Cal.App.4th at p. 1157, italics omitted.)
>
> Sufficient evidence supports defendant's conviction for criminal
> threats against Kristin as charged in count one.

6    (Opinion at 7-11.)

7               The Due Process Clause of the Fourteenth Amendment "protects the accused

8    against conviction except upon proof beyond a reasonable doubt of every fact necessary to

9    constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There

10   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

11   favorable to the prosecution, any rational trier of fact could have found the essential elements of

12   the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

13   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988).  "[T]he dispositive question under

14   Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

15   reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

16   U.S. at 318).  A petitioner for a federal writ of habeas corpus "faces a heavy burden when

17   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

18   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order

19   to grant the writ, the federal habeas court must find that the decision of the state court reflected

20   an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

21               The court must review the entire record when the sufficiency of the evidence is

22   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

23   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

24   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

25   reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of

26   fact could draw conflicting inferences from the evidence, the court in its review will assign the

9

1   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

2   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

3   the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

4   Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

5   reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors

6   reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

7   determines sufficiency of the evidence in reference to the substantive elements of the criminal

8   offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

9           Viewing the evidence in the light most favorable to the verdict, and for the

10  reasons described by the California Court of Appeal, the undersigned concludes that there was

11  sufficient evidence from which a rational trier of fact could have found beyond a reasonable

12  doubt that petitioner was guilty of making terrorist threats against Kristin, as that crime is defined

13  by California law.  The state appellate court opinion rejecting petitioner's argument in this regard

14  is a reasonable construction of the evidence in this case and is not contrary to or an objectively

15  unreasonable application of federal law.  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002); see

16  also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief on this claim.

17          B.  Cross-Examination of Kristen

18          Petitioner's next two claims concern the trial court's ruling that the defense could

19  not cross-examine Kristin regarding her history of psychological problems.  Petitioner explains

20  that such cross-examination may have shown that Kristen's fear was caused by her mental

21  disorder and not by petitioner's words and actions.  Petitioner contends that the trial court's

22  evidentiary ruling violated his Sixth Amendment right to confront the witnesses against him and

23  his rights to "due process of law and compulsory process under the Fifth and Sixth Amendments

24  to the United States Constitution."  (Am. Pet. at 31, 43.)

25          The California Court of Appeal fairly explained the background to these claims as

26  follows:

In discussing in limine matters, the prosecutor noted that, at the request of defense counsel and the court, the prosecutor talked to Kristin who stated the following.  Kristin had suffered a personality disorder related to depression based on her feelings of instability in personal relationships and lack of self-esteem.  Although she had previously taken an antidepressant medication, she had not been on medication for the previous two years.  Kristin had spoken with her physician, who distinguished her personality disorder, common amongst teenagers, from those related to paranoia or hallucinations.

The prosecutor understood that defense counsel proposed to impeach Kristin with questions calling for privileged information and to subpoena Kristin's records.  The prosecutor moved to quash any such subpoena and asserted the psychotherapist/patient privilege on Kristin's behalf pursuant to Evidence Code section 1014.

Defense counsel stated his understanding of Kristin's mental health.  She had been in psychiatric care for years, up to August 1999.  Prior to the age of 18, she attempted suicide on two occasions.  Defense counsel argued "the whole issue is Kristin's credibility," and the court should not rely on Kristin's evaluation of her problem but rather should review the records in camera.  Defense counsel argued that Kristin's mental status affected her perception of the incident and whether she reasonably sustained fear and that Kristin's own admissions, without any records, constituted a sufficient showing of psychological problems.

The prosecutor responded that defense counsel had not shown good cause for the court to review the records in camera and that, because a reasonable-person standard applied, whether Kristin sought counseling in the past was irrelevant.

Although the trial court took the matter under submission, it tentatively concluded, at least until after direct examination, that the medical records would not be reviewed, because such records were not relevant to Kristin's credibility or her ability to perceive.

The next day, the prosecutor moved in limine to preclude defense counsel from asking Kristin about her suicide attempts and any other questions about psychiatric treatment for a mental disorder.  Consistent with the court's tentative ruling regarding psychiatric records, the court granted the motion subject to further consideration after direct examination.

After Kristen testified, the court ruled:  "With respect to the request by the Defense for the Court to review the psychiatric records, psychotherapy records of Kristin Seishan, I do not find after listening to the testimony that there is sufficient good cause to overcome the psychotherapist/patient privilege such as to open the

11

1    documents that have been subpoenaed from the psychotherapist."
     Defense counsel queried, "In the event that I should recall Miss
2    Seishan and cross-examine her regarding her psychiatric history, I
     assume the Court would allow me to remake my motion at that
3    time if there was a change of circumstances."  The court agreed.

4    Thereafter, prior to recalling Kristin to testify, defense counsel
     asked the court once again to allow cross-examination concerning
5    Kristin's psychiatric history.  The court found an insufficient basis
     to question Kristin about her treatment in that it had no bearing on
6    her credibility and that an objective standard applied to whether
     she was reasonably in sustained fear.  The prosecutor later clarified
7    that her disclosure of Kristin's condition was to show it was not
     relevant to the case.  The prosecutor feared that defense counsel
8    would ask Kristin whether she hallucinated.  The prosecution
     requested that the court exercise its discretion under Evidence
9    Code section 352 and preclude all questioning relating to Kristin's
     mental background.  The court noted that it had already ruled there
10   would be no references to psychotherapy, because it was irrelevant,
     that the defense had made an insufficient showing otherwise and
11   that "it would be unduly prejudicial without a sufficient basis."

12   (Opinion at 12-14.)

13         Petitioner argues that evidence about Kristin's mental health history was

14   necessary to show that her reaction to petitioner's words was not "reasonable."  (Am. Pet. at 31,

15   32.)  He states:

16         Whether her subjective reaction was extreme and objectively
           unreasonable was not explored at trial.  The trial court prevented
17         the defense from questioning her on her history of psychological
           problems, which could support the finding that her reaction to
18         appellant's words was not reasonable.

19   (Id. at 32.)  To illustrate his point, petitioner argues, "it is unlikely that any of the other waitresses

20   would have reacted that way because it was not a reasonable reaction."  (Id. at 34.)  He contends

21   that Kristen's "claims of fear could not be placed in proper perspective sans admission of

22   evidence that tended to reveal the potential for overreaction based on past psychological

23   abnormal reactions."  (Id. at 44.)  Petitioner disagrees with the trial court's conclusion that

24   evidence of Kristen's mental health was irrelevant and unduly prejudicial, and argues that his

25   right to cross-examination outweighed Kristen's right to assert the psychotherapist/patient

26   privilege with respect to her prior mental health history.  (Id. at 39, 40-42.)

                                          12

1        The California Court of Appeal rejected petitioner's arguments in this regard,

2   reasoning as follows:

3            We disagree.  The element of the offense requiring that the
             defendant's words caused the victim reasonably to be in sustained
4            fear has two components – the victim actually sustained fear, a
             subjective evaluation, and the victim's fear was reasonable, an
5            objective evaluation that asks whether a reasonable person being
             treated in a like manner would reasonably be in sustained fear.
6            (See In re Ricky T. (2001) 87 Cal.App.4th 1132, 1140.)  Thus,
             whether Kristin suffered psychological problems was irrelevant to
7            the issue whether her fear was objectively reasonable, and the trial
             court properly precluded defendant from cross-examining Kristin
8            about her psychological history.

9            Contrary to defendant's claim, Kristen did not place her mental
             health at issue.  He mistakenly relies on Evidence Code section
10           1016, which is inapplicable here.  A patient does not place her
             mental health at issue by charging someone with a crime.  (See
11           Susan S. v. Israels (1997) 55 Cal.App.4th 1290, 1297.)
             "[A]lthough a witness's credibility is always in issue, this does not
12           mean the defense is entitled to rummage through the medical
             records of every witness in a criminal prosecution to impeach the
13           witness's credibility."  (Ibid.)  Further, "[t]here is a duty [of the
             court] to protect [a witness] from questions which go beyond the
14           bounds of proper cross-examination merely to harass, annoy or
             humiliate [her]."  (Alford v. United States (1931) 282 U.S. 687,
15           694 [75 L.Ed. 624, 629].)  The trial court's rulings on this issue
             were correct.

16

17   (Opinion at 16-17.)

18        The Sixth Amendment guarantees a criminal defendant the right "to be confronted

19   with the witnesses against him."  U.S. Const. Amend. VI.  The primary interest secured by the

20   confrontation clause is the right of cross-examination.  Davis v. Alaska, 415 U.S. 308, 315

21   (1974) (quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965)).  However, the Confrontation

22   Clause does not prevent trial judges from imposing limits on cross-examination.  Delaware v.

23   Van Arsdall, 475 U.S. 673, 679 (1986).  Rather, "the Confrontation Clause guarantees an

24   opportunity for effective cross-examination, not cross-examination that is effective in whatever

25   way, and to whatever extent, the defense might wish."  Id. (quoting Delaware v. Fensterer, 474

26   U.S. 15, 20 (1985) (emphasis in original)).  In fact, "a trial judge retains 'wide latitude' to limit

13

defense counsel's questioning of a witness without violating a defendant's Sixth Amendment rights." Carriger v. Lewis, 971 F 2d 329, 333 (9th Cir. 1992). See also Michigan v. Lucas, 500 U.S. 145, 149 (1991). For instance, a trial court has a duty to protect a trial witness "from questions which go beyond the bonds of proper cross-examination merely to harass, annoy or humiliate" the witness. Alford, 282 U.S. at 694. "'A limitation on cross examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness.'" Murdoch v. Castro, 489 F.3d 1063, 1069 (9th Cir. 2007) (quoting United States v. Bridgeforth, 441 F.3d 864, 868 (9th Cir. 2006)).

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). However, the constitutional right to present a defense is not absolute. Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983). A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998). A criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Montana v. Egeloff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)). See also Carriger, 971 F.2d at 333. Finally, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

California Penal Code § 422 requires that a defendant's threats cause the victim "reasonably to be in sustained fear for his or her own safety." Under this code section "a victim must actually be in sustained fear, and the sustained fear must be reasonable under the

1   circumstances."  In re Ricky T., 87 Cal. App. 4th 1132, 1140 (2001).  As explained by the state

2   appellate court and conceded by petitioner, there was ample evidence introduced at petitioner's

3   trial demonstrating that petitioner's remarks caused Kristen actual fear.  The only question is

4   whether her fear was "reasonable under the circumstances."

5          Under California law, whether the victim's fear for his/her safety was reasonable

6   is determined by application of an objective test.  In other words, the test is not based on the

7   reactions of any particular person but is based on the objective reaction of a "reasonable person."

8   (Opinion at 16.)  Evidence of Kristen's mental health history was thus irrelevant to the issue of

9   how a "reasonable person" would have reacted to petitioner's threats, and was properly excluded.

10  In any event, evidence was introduced at petitioner's trial to show that Kristen's reaction was

11  extreme.  Specifically, petitioner's counsel elicited testimony that petitioner had "problems" with

12  other waitresses at the restaurant and that petitioner and some of the other employees "would

13  constantly argue back and forth and yell at each other."  (Reporter's Transcript on Appeal (RT) at

14  89.)  The implication of this evidence was that these other employees did not accuse petitioner of

15  having committed a crime, and that Kristen was unreasonable in reacting as strongly as she did.

16         The trial court reasonably imposed limits on the cross-examination of Kristen in

17  order to exclude irrelevant evidence about her mental health history.  The trial court's ruling was

18  not "arbitrary or disproportionate" and did not render petitioner's trial fundamentally unfair.  For

19  these reasons, the decision of the California Court of Appeal that petitioner's federal

20  constitutional rights were not violated by the trial court's preclusion of cross-examination

21  concerning Kristen's mental health history was not contrary to or an unreasonable application of

22  federal law.  Accordingly, petitioner is not entitled to relief on this claim.

23         C.  Admission into Evidence of Prior Bad Acts

24         Petitioner's next claim is that the trial court improperly allowed the introduction

25  into evidence of his "prior misconduct" in order to "bolster its weak case concerning the threat

26  against Ms. Seishas."  (Am. Pet. at 46.)  The court will evaluate these claims in turn below.

1          1.  <u>Missing Information</u>

2          Petitioner claims that the trial court improperly permitted the prosecutor to

3  introduce evidence that he threatened Ms. Maldonado, that Kristen's personnel file was missing

4  from the restaurant's office and that his uncle may have obtained access to Maldonado's personal

5  information.  (Id.)

6          The state court record reflects that the prosecutor asked Kristen whether, "at some

7  point," she learned that her personnel file was missing.  (RT at 83.)  She responded, "yes."  (Id.)

8  When the prosecutor asked her whether she took any actions as a result, defense counsel objected

9  on the grounds that there was no evidence petitioner had anything to do with the absence of the

10  personnel file.  (Id. at 83-84.)  After the trial court overruled this objection, Kristen testified that

11  she asked her then employer not to give out her personal information to anyone.  (Id. at 84.)  She

12  also testified that, as a result of petitioner's threats, she eventually changed her phone number

13  and moved to another residence.  (Id. at 85.)  Subsequently, petitioner's counsel conducted

14  extensive cross-examination in order to dispel any insinuation that petitioner may have stolen the

15  personnel file.  (Id. at 85-88.)

16          The state court record also reflects that after the prosecutor asked Ms. Maldonado

17  whether she had "anything further you would like to add," Maldonado stated: "The reason that I

18  left Eppie's is Manuel's uncle got ahold of my personal information."  (Id. at 146.)  The trial

19  court immediately sustained a defense objection and the subject was not pursued any further.  (Id.

20  at 146-47.)

21          A writ of habeas corpus will be granted for an erroneous admission of evidence

22  "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary

23  system will not be competent to uncover, recognize, and take due account of its shortcomings.'"

24  Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S.

25  880, 899 (1983)).  The introduction of evidence violates due process only if "there are no

26  permissible inferences the jury may draw from the evidence."  Jammal, 926 F. 2d at 920.  Even

1    then, the challenged evidence must "be of such quality as necessarily prevents a fair trial." Id.

2    (quoting Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).

3            Under Ninth Circuit law, the admission of "other acts" evidence violates due

4    process only if there were no permissible inferences the factfinder could have drawn from the

5    evidence. See McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993) (the question is "whether

6    any inferences relevant to a fact of consequence may be drawn from each piece of the evidence,

7    or whether they lead only to impermissible inferences about the defendant's character"); Jammal

8    v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) ("[e]vidence introduced by the prosecution

9    will often raise more than one inference, some permissible, some not; we must rely on the jury to

10   sort them out in light of the court's instructions"); see also United States v. LeMay, 260 F.3d

11   1018, 1027 (9th Cir. 2001) (evidence of prior similar crimes "will only sometimes violate the

12   constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far

13   outweighs what little relevance it might have"). For purposes of AEDPA, petitioner must

14   demonstrate that the California courts' rejection of his federal due process claim was contrary to

15   or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1);

16   Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

17           The court concludes that petitioner's trial was not rendered fundamentally unfair

18   as a result of the admission into evidence of the challenged testimony. First, all arguable

19   references to possible prior bad acts by petitioner were fleeting and unsupported by any

20   compelling evidence. Moreover, in the case of Ms. Maldonado's testimony, a defense objection

21   was sustained and the topic was dropped. Finally, although Kristen's testimony that she learned

22   that her personnel file at work was missing was admitted, petitioner's counsel through cross-

23   examination effectively dispelled any possible insinuation that petitioner was responsible. Thus,

24   the challenged testimony was not of a quality that would result in the denial of a fair trial. Under

25   these circumstances, petitioner is not entitled to relief on this claim.

26   /////

2.  <u>Threats Against Former Co-Worker</u>

Petitioner also objects to the trial court's admission of evidence that petitioner threatened a former co-worker and roommate.  (Am. Pet. at 47.)[2]  The California Court of Appeal fairly described the background to this claim as follows:

>    Defendant testified he was a "nice guy" and got along well with coworkers.  Outside the presence of the jury, the prosecutor offered the testimony of Philip Jones, a former coworker and short-time roommate, who would testify that he received a written threat from defendant ("You better pay me the $20 or you will be sorry, you will get hurt bad."), which, in part, led to defendant's transfer to another restaurant.  The note was left at the restaurant and signed by defendant.  The prosecutor cited Evidence Code section 1101, subdivision (b) (intent) and also argued that "defendant opened the door" when he claimed he was a "nice guy."
>
>    Defense counsel asserted that the note referenced an unpaid bill when Philip moved out as defendant's roommate, so it related to defendant's relationship with roommates not coworkers.
>
>    The trial court ruled that Philip's testimony was admissible: "With respect to the nice guy and Phil, I'll allow him to come in and say that he felt he wasn't a nice guy because he threatened him on this occasion.  I'm not allowing another 1101(b) offer.  And the defendant can get along with him or he didn't get along with the defendant."  Philip, thereafter, testified in accordance with the offer of proof.

(Opinion at 18-19.)

On appeal, petitioner argued that the introduction of Philip's testimony violated the California Evidence Code and the Due Process Clause.  (<u>Id.</u> at 18.)  The California Court of Appeal rejected the Evidence Code argument on state law grounds.  With regard to the federal constitutional claim, the court ruled as follows:

>    Defendant's failure, in the trial court, to object on the grounds of due process waives any challenge on that basis to the admission of the uncharged misconduct.  (<u>People v. Rowland</u> (1992) 4 Cal.4th 238, 265, fn. 4; <u>People v. Raley</u> (1992) 2 Cal.4th 870, 892.)

---

[2]  Pages 47 - 53 of the amended petition were missing from the original petition filed in this court on April 29, 3005.  Those missing pages were later filed by petitioner on May 7, 2008.

1   (Id. at 20-21.)  Respondent now argues that the ruling by the California Court of Appeal on the

2   federal constitutional claim constitutes a state procedural bar precluding this court from

3   addressing the merits of petitioner's due process claim.  (Answer at 11.)

4          State courts may decline to review a claim based on a procedural default.

5   Wainwright v. Sykes, 433 U.S. 72  (1977).  As a general rule, a federal habeas court "'will not

6   review a question of federal law decided by a state court if the decision of that court rests on a

7   state law ground that is independent of the federal question and adequate to support the

8   judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

9   (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

10  only "adequate" if it is "firmly established and regularly followed."  Id. (quoting Ford v. Georgia,

11  498 U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o

12  be deemed adequate, the state law ground for decision must be well-established and consistently

13  applied.")  The state rule must also be "independent" in that it is not "interwoven with the federal

14  law."  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463

15  U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claim may be

16  reviewed by the federal court if the petitioner can show:  (1) cause for the default and actual

17  prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the

18  claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

19         Respondent has met his burden of adequately pleading an independent and

20  adequate state procedural ground as an affirmative defense.  See Bennett, 322 F.3d at 586.

21  Petitioner does not deny that his trial counsel did not raise a contemporaneous objection on

22  federal due process grounds to the introduction of Philip's testimony.  (Traverse at 8.)  Petitioner

23  has failed to meet his burden of asserting specific factual allegations demonstrating the

24  inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or

25  not well-established, either as a general rule or as applied to him.  Id.; Melendez v. Pliler, 288

26  F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claim is therefore procedurally barred.  See

1   Coleman, 501 U.S. at 747; Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Davis v. Woodford,

2   384 F.3d 628, 654 (9th Cir. 2004) (claim procedurally barred on federal habeas where petitioner

3   "raised only an evidentiary, not a constitutional, objection at trial"); Paulino v. Castro, 371 F.3d

4   1083, 1092-93 (9th Cir. 2004) (claim that defendant's due process rights were violated by the

5   trial court's failure to instruct sua sponte on the definition of "major participant" was

6   procedurally barred because counsel failed to make a contemporaneous objection to the

7   instruction at trial).  Petitioner has also failed to demonstrate that there was cause for his

8   procedural default or that a miscarriage of justice would result absent review of the claim by this

9   court.  See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999).

10  The court is therefore precluded from considering the merits of this claim.

11          Even were this claim not procedurally barred, it lacks merit.  The question

12  whether evidence of prior uncharged acts was properly admitted under California law is not

13  cognizable in this federal habeas corpus proceeding.  Estelle, 502 U.S. at 67.  The only question

14  posed to this court by the pending habeas petition is whether the trial court committed an error

15  that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.

16  Id.; see also Jammal, 926 F.2d at 919 ("the issue for us, always, is whether the state proceedings

17  satisfied due process; the presence or absence of a state law violation is largely beside the

18  point").

19          Petitioner's trial was not rendered fundamentally unfair because of the admission

20  of evidence of his threat against Philip.  The prior acts evidence against petitioner was reliable

21  and was admissible to impeach petitioner's testimony that he was a "nice guy."  Although the

22  prior crimes evidence was perhaps arguably potentially powerful, "[the fact] that prior acts

23  evidence is inflammatory is not dispositive in and of itself."  LeMay, 260 F.3d at 1030.  Further,

24  the other incident was no more inflammatory than the circumstances of the two charged crimes.

25  Under these circumstances, admission of the "other crimes" evidence did not result in a due

26  process violation.

1    In any event, the United States Supreme Court "has never expressly held that it

2    violates due process to admit other crimes evidence for the purpose of showing conduct in

3    conformity therewith, or that it violates due process to admit other crimes evidence for other

4    purposes without an instruction limiting the jury's consideration of the evidence to such

5    purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds

6    by Woodford v. Garceau, 538 U.S. 202 (2003).  Rather, the Supreme Court has expressly left

7    open this question.  See Estelle, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we

8    express no opinion on whether a state law would violate the Due Process Clause if it permitted

9    the use of 'prior crimes' evidence to show propensity to commit a charged crime").  Petitioner

10    therefore has failed to demonstrate that the California courts' rejection of his federal due process

11    claim was contrary to or an unreasonable application of clearly established federal law as

12    required under  28 U.S.C. § 2254(d)(1).  See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir.

13    2008) (claim that trial court's use of "other crimes" evidence to show a propensity for criminal

14    activity violated due process properly denied under AEDPA because the Supreme Court has

15    "expressly left this issue an 'open question'"); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th

16    Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 1834 (2007) (rejecting petitioner's claim that

17    the introduction of propensity evidence violated his due process rights under the Fourteenth

18    Amendment because "the right [petitioner] asserts has not been clearly established"); Holgerson

19    v. Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted unless due process

20    violation was "clearly established" under federal law); Alvarado v. Hill, 252 F.3d 1066, 1068-69

21    (9th Cir. 2001) (same).

22    For all of these reasons, petitioner's is not entitled to relief on these claims.

23    D.  Ineffective Assistance of Counsel

24    Petitioner raises numerous claims of ineffective assistance of pretrial, trial, and

25    appellate counsel.  Respondent argues that these claims are barred by the statute of limitations

26    contained in 28 U.S.C. § 2244(d)(1).  Petitioner has not responded to the statute of limitations

argument advanced by respondent.  Below, the court will address whether petitioner's ineffective assistance of counsel claims have been timely filed in this court.

### 1. Statute of Limitations

The AEDPA imposed a one-year statute of limitations on the filing of federal habeas petitions.  Title 28 U.S.C. § 2244 provides as follows:

> (d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>     (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>     (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

### 2. Factual Background

For purposes of statute of limitations analysis, the relevant chronology of this case is as follows.  Following his conviction petitioner filed a timely notice of appeal in state court, in which he claimed that: (1) the evidence was insufficient to support his conviction on count one; (2) the trial court violated his constitutional rights by limiting his efforts to impeach and cross-examine the complaining witness; and (3) his right to due process was violated when he was improperly impeached with a prior bad act.  (Appellant's Opening Brief, Third Appellate District

Court of Appeal, lodged on August 10, 2005.)  The California Court of Appeal affirmed petitioner's conviction in an unpublished opinion filed on April 30, 2002.  (April 30, 2002, Court of Appeal Opinion Affirming Petitioner's Conviction, lodged on August 10, 2005.)

On May 14, 2002, petitioner filed a petition for review in the California Supreme Court, in which he raised the same claims he had raised on direct appeal.  (Petition for Review, lodged on August 10, 2005.)  That petition was summarily denied by order dated July 10, 2002. (July 10, 2002 Order Denying Review, lodged on August 10, 2005.)

On March 17, 2003, petitioner filed a petition for writ of habeas corpus in this court setting forth the same fully exhausted claims he had raised on appeal.[3]  On August 18, 2003, he filed a motion to hold his petition in abeyance while he presented additional claims to the state courts.  On January 17, 2004, this court issued findings and recommendations recommending that petitioner's motion for abeyance be granted.  Petitioner was advised that he should file a state exhaustion petition within thirty days.

On January 20, 2004, petitioner filed a petition for writ of habeas corpus in Sacramento County Superior Court, in which he claimed that his pretrial, trial and appellate counsel rendered ineffective assistance and that "new evidence" cast doubt on the credibility of prosecution witnesses.  (January 20, 2004, Sacramento County Superior Court Petition for Writ of habeas Corpus, lodged on August 10, 2005.)

On February 2, 2004, the district court adopted the January 17, 2004 findings and recommendations and granted petitioner's motion to hold his petition in abeyance so that he could exhaust additional claims in state court.

On March 11, 2004, the Sacramento County Superior Court denied petitioner's habeas petition as untimely and on the merits.  (March 11, 2004, Sacramento County Superior Court Order Denying Petition, lodged on August 10, 2005.)

---

[3]  See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

On April 26, 2004, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, in which he claimed that his pretrial, trial and appellate counsel rendered ineffective assistance.  (April 26, 2004, California Supreme Court Petition for Writ of Habeas Corpus, lodged on August 10, 2005.)  That petition was summarily denied by order dated March 23, 2005.  (March 23, 2005, Order Denying the Petition, lodged on August 10, 2005.)

On April 29, 2005, petitioner filed an amended petition for writ of habeas corpus in this court.

### 3. Analysis of Statute of Limitations

The California Supreme Court denied review of petitioner's judgment of conviction on direct appeal on July 10, 2002.  The ninety day period during which petitioner could have filed a petition for writ of certiorari in the United States Supreme Court expired on October 8, 2002.  Therefore, petitioner's judgment of conviction became final for purposes of § 2244(d)(1)(A) on October 8, 2002.  See Tillema v. Long, 253 F.3d 494, 498 (9th Cir. 2001); Bowen v. Roe, 188 F.3d 1157, 1158-1159 (9th Cir. 1999).

The one-year statute of limitations began to run on October 9, 2002 (see Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001)), and ran without interruption until October 8, 2003.[4]  Petitioner filed his state exhaustion petition in the Sacramento County Superior Court on

---

[4] Petitioner filed his first federal petition for writ of habeas corpus in this court on March 17, 2003, before the expiration of the statute of limitations.  However, the filing of this federal petition did not operate to toll the statute of limitations.  Duncan v. Walker, 533 U.S. 167, 181-82 (2001) (the statutory tolling provision contained in § 2244(d)(2) authorizes tolling while a petitioner is pursuing state, but not federal, post-conviction remedies).  Further, there is no basis for equitable tolling of the statute of limitations because petitioner was not affirmatively misled by the court.  See Brambles v. Duncan, 412 F.3d 1066, 1071 (9th Cir. 2005) (petitioner not entitled to equitable tolling of the statute of limitations where he filed an untimely petition after he had previously filed a timely mixed petition but, pursuant to district court instructions that were not affirmatively misleading, chose to dismiss the entire petition and return to state court to exhaust additional claims); see also Raspberry v. Garcia, 448 F.3d 1150, 1153-54 (9th Cir. 2006) (affirming the denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include unexhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling).

1    January 20, 2004.  Respondents argue that because this petition was filed more than a year after

2    the AEDPA statute of limitations began to run on October 9, 2002, the amended petition filed in

3    this court on April 29, 2005, is barred by the statute of limitations.

4           District courts may employ a "stay-and-abeyance" procedure in which the court

5    stays an exhausted petition in order to allow exhaustion of additional claims in state court.  See

6    Anthony v. Cambra, 236 F.3d 568, 575 (9th Cir. 2000) ("[o]ur precedent unequivocally

7    authorizes district courts to stay fully exhausted federal petitions pending exhaustion of other

8    claims").  Once the petitioner has exhausted the unexhausted claims in state court, the court may

9    allow the petitioner to amend the original federal petition by adding the newly-exhausted claims,

10   which may under appropriate circumstances "relate back" to the original petition, pursuant to

11   Fed. R. Civ. P. 15(c).  Kelly v. Small, 315 F.3d 1063, 1070 (9th Cir. 2003), overruled on other

12   grounds by Robbins v. Carey, 481 F.3d 1143, 1149 (9th Cir. 2007).

13          In Mayle v. Felix, 545 U.S. 644 (2005), the United States Supreme Court held that

14   claims raised in an amended habeas corpus petition filed after expiration of the limitations period

15   relate back to claims raised in a timely petition only if the claims "are tied to a common core of

16   operative facts."  Id. at 664.  The fact that the claims arise from the same trial, conviction or

17   sentence, without more, is insufficient to support relation back of the claims.  Id.  New claims do

18   not relate back if they depend upon events separate in both "time and type" from those set forth

19   in the original pleading.  Id. at 650.  See also United States v. Ciampi, 419 F.3d 20, 24 (1st Cir.

20   2005) ("[A] petitioner does not satisfy the Rule 15 "relation back" standard merely by raising

21   some type of ineffective assistance in the original petition, and then amending the petition to

22   assert another ineffective assistance claim based upon an entirely distinct type of attorney

23   misfeasance."), cert. denied 547 U.S. 1217 (2006).

24          Here, respondent contends that the new ineffective assistance of counsel claims

25   raised in petitioner's amended petition do not arise from a common core of operative facts

26   underlying the claims that petitioner advanced in his original petition filed with this court.

1   Therefore, respondent argues, the new ineffective assistance of counsel claims do not "relate

2   back" to the timely filed original petition.  If petitioner's claims of ineffective assistance of

3   counsel set forth in the amended petition do not relate back to the original petition, they are time-

4   barred because they were filed beyond the one-year statute of limitations period established by

5   the AEDPA.[5]

6            The habeas petition filed by petitioner in this court on March 17, 2003 contained

7   four claims: (1) the evidence was insufficient to support his conviction on count one; (2) the trial

8   court violated his Sixth Amendment right to confrontation by limiting his efforts to impeach

9   Kristen with evidence of her mental health history; (3) the trial court violated his right to due

10  process and "compulsory process" by limiting his efforts to cross-examine Kristen with evidence

11  of her mental health history; and (4) his right to due process was violated when he was

12  improperly impeached with evidence of prior bad acts in the form of: (a) an alleged threat against

13  Ms. Maldonado; (b) the disappearance of Kristen's personnel file; (c); information that

14  petitioner's uncle obtained personal information about Ms. Maldonado, and (d) the threat against

15  Philip Jones, described above.  As part of the last of these claims, petitioner also alleged that his

16  trial counsel should have requested a cautionary instruction that the jury should disregard the

17  testimony of Ms. Maldonado when she stated that she thought petitioner's uncle had obtained her

18  personal information.  (March 17, 2003 Petition, at 36.)  In addition, petitioner made the

19  following statement in his original habeas petition:

20  /////

21  /////

22  /////

23

24        [5] As noted above, the statute of limitations for the presenting of claims to this court
    would have expired on October 8, 2003 and would not have been tolled by the filing of the first
25  federal petition.  Petitioner's first exhaustion petition containing the new ineffective assistance of
    counsel claims was not filed in state court until January 20, 2004, over three months after the
26  AEDPA statute of limitations for the presentation of those claims in federal court had expired.

1
2

> Trial counsel in many of these instances rendered ineffective
> assistance by failing to object.  There were no strategic or other
> good reasons for counsel to remain silent.

3   (Id. at 37-38.)[6]

4          In his amended petition filed on April 29, 2005, petitioner raises the following

5   additional claims: his pretrial and trial counsel: (1) failed to communicate with petitioner about

6   conducting interviews with Kristen, Theresa Maldonado, and Philip Jones (Am. Pet. at 51); (2)

7   failed to interview Assistant Manager Bill Owen and Kitchen Manager Don Tipple regarding the

8   alleged threats (id. at 52); (3) failed to interview other witnesses suggested by petitioner who

9   observed the relevant events and could have corroborated his claim of innocence (id. at 52-53);

10  (4) failed to interview and subpoena employees of the restaurant who would have disproved the

11  pretrial testimony of Kristen and Maldonado to the effect that petitioner "had a history of arguing

12  and causing commotion among fellow servers and employees" (id. at 53); (5) failed to file a pre-

13  trial motion to suppress the threatening note he allegedly wrote to Philip Jones (id. at 54); (6)

14  improperly failed to introduce petitioner's employment records into evidence, which would have

15  shown that petitioner was never sent home or suspended for misconduct (id. at 53, 54, 58, 68-

16  69); (7) failed to sufficiently communicate with petitioner, in retaliation for his complaints about

17  counsel (id. at 54-55); (8) failed to investigate the fraudulent allegations made by Kristin and Ms.

18  Maldonado that they obtained a restraining order against petitioner and that a police officer was

19  present at the restaurant thereafter to protect Kristen (id. at 55, 66); (9) failed to interview and

20  subpoena numerous witnesses for trial, including petitioner's co-workers (id.); (10) failed to

21  investigate an assault against petitioner by the Sacramento Police Department during petitioner's

22  arrest (id. at 56, 59); (11) "refused to communicate with Petitioner, interview his witnesses,

23  gather evidence, file pre-trial motions, investigate the case, suppress hearsay testimony and

24

25          ───────────────────

26          [6] Petitioner also made these latter allegations in his opening brief on appeal.  (Opinion at
    21.)  The state appellate court declined to address these arguments, noting that they had not been
    properly presented as a separate claim with supporting legal citations.  (Id.)

1  inquire into the police assault [against petitioner]" (id. at 56); (12) failed to object to

2  "inadmissible evidence, inflammatory testimony, orchestrated hearsay information,

3  uncollaborated references by Kristin Seishas, Theresa Maldonado and Philip Jones that was

4  solely designed to mislead the jury" (id. at 57); (13) failed to call to the stand persons who had

5  been designated as potential defense witnesses (id.); (14) failed to investigate corroborative

6  witnesses that Kristin, Ms. Maldonado and Jones made reference to in their responses to

7  discovery (id. at 57, 63, 65-66); failed to subject the prosecution case to "meaningful adverse

8  testing process" (id. at 58); (15) allowed the prosecutor to suppress evidence of Kristin's mental

9  health history (id.); (16) failed to subpoena a police officer and to cross-examine another officer,

10  who could have rebutted the testimony of Ms. Maldonado to the effect that petitioner had

11  threatened to harm her children (id. at 58-60); (17) failed to respond to a prejudicial remark made

12  by the prosecutor during his closing argument regarding the threatening note received by Jones

13  (id. at 60); (18) improperly discarded investigative reports and police records related to

14  petitioner's case (id. at 61); (19) failed to object to the "hearsay testimony" of Ms. Maldonado to

15  the effect that "her employee Ruby told her to be very careful in terminating petitioner, because

16  he had murdered somebody" (id. at 76); and (20) failed to investigate the circumstances

17  surrounding the threatening note allegedly received by Jones.  (Id. at 77-78).  Petitioner further

18  claims that his appellate counsel improperly refused to raise on appeal a proper claim of

19  ineffective assistance of trial counsel.  (Id. at 62, 82.)  Petitioner claims that the cumulative effect

20  of all these errors made by his various counsel resulted in prejudice.  (Id. at 60, 78-82.)

21          Applying the test set forth by the Supreme Court in Felix, this court concludes that

22  the following claims in the amended petition relate back to the March 17, 2003 petition filed in

23  this court and are therefore timely: (1) trial counsel "allow[ed]" the prosecutor to suppress

24  evidence of Kristin's mental health history (id. at 58); and (2) trial counsel failed to investigate

25  the circumstances surrounding the threatening note allegedly received by Jones.  (Id. at 60).  In

26  this regard, the court notes that petitioner makes several references in his amended petition to

1   testimony from Kristen to the effect that her personnel file was missing from the restaurant, and

2   from Ms. Maldonado to the effect that petitioner's uncle obtained access to her personal

3   information in relation to these claims.  (Id. at 46-47).  Petitioner specifically claims that his trial

4   counsel rendered ineffective assistance in connection with this testimony.  (Id. at 47.)

5   Accordingly, these claims would also appear to relate back to the original petition pursuant to the

6   test set forth in Felix because they appear to arise from the same "core of operative facts" as the

7   claims presented in the original petition.

8            However, none of petitioner's other ineffective assistance of counsel claims set

9   out in the amended petition arise from a "core of operative facts" shared with the claims raised in

10  the  original petition.  Specifically, petitioner's claims contained in the March 17, 2003 petition

11  stem from the sufficiency of the evidence introduced at trial, the trial court's ruling disallowing

12  testimony about Kristin's mental health history, and the trial court's ruling allowing the

13  introduction of evidence of the threatening note received by Philip Jones.  By contrast, the

14  remaining ineffective assistance of counsel claims which petitioner has presented in his amended

15  petition stem from other distinct aspects of his trial and pretrial proceedings and are based on

16  independent facts, different in both time and type.  Put another way, the original petition does not

17  allege the essential facts which predicate the latter claims.  Because these claims brought for the

18  first time in the amended petition involve different errors committed at different times, they do

19  not satisfy the requirements of the "relation back" doctrine in the habeas context as explained by

20  the court in Felix and are therefore barred by the statute of limitations.  Accord Ciampi, 419 F.3d

21  at 24 (holding that claim alleging ineffective assistance based on counsel's failure to explain

22  consequences of guilty plea did not relate back to claim alleging due process violation based on

23  trial court's failure to advise defendant of same consequences); Jones v. Woodford, No.

24  03cv1463 J(RBB), 2008 WL 505230 *42 (S.D. Cal. Feb 25, 2008) (new claims that involve

25  /////

26  /////

29

1  different errors and different times from those previously alleged do not relate back to the filing

2  of the earlier federal petition).[7]

3                   4.  Timely Ineffective Assistance of Counsel Claims

4           As discussed above, petitioner has raised timely claims that his trial counsel:

5  (1) "allow[ed]" the prosecutor to suppress evidence of Kristin's mental health history (Am. Pet.

6  at 58); (2) failed to investigate the circumstances surrounding the threatening note allegedly

7  received by Philip Jones (id. at 60); and (3) failed to object to Kristen's testimony that her

8  personnel file was missing from the restaurant and to testimony from Ms. Maldonado that

9  petitioner's uncle obtained access to her personal information.  The court will analyze these

10  claims in turn below.[8]

11           a.  Legal Standards

12           The Sixth Amendment guarantees the effective assistance of counsel.  To support

13  a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the

14  circumstances, counsel's performance fell below an objective standard of reasonableness.

15  Strickland, 466 U.S. at  687-88.  After a petitioner identifies the acts or omissions that are alleged

16  not to have been the result of reasonable professional judgment, the court must determine

17  whether, in light of all the circumstances, the identified acts or omissions were outside the wide

18  range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521

19  (2003).  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption

20  that counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman

21  v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in

22

23       [7] Even assuming arguendo that these other claims of ineffective assistance of counsel
were timely filed, petitioner has failed to demonstrate prejudice with respect to such claims

24  because he has not established that "but for counsel's unprofessional errors, the result of the
proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 694 (1984).

25       [8] Respondent requested leave to file further briefing addressing the merits of any claim of

26  ineffective assistance of counsel that this court deems timely filed.  (Answer at 20.)  However,
the court has determined further briefing to be unnecessary.

1  addition a strong presumption that counsel "exercised acceptable professional judgment in all

2  significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

3  Strickland, 466 U.S. at 689).

4        Second, a petitioner must establish that he was prejudiced by counsel's deficient

5  performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable

6  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

7  been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine

8  confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

9  F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's

10  performance was deficient before examining the prejudice suffered by the defendant as a result of

11  the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of

12  lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949,

13  955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

14        b. Kristin's Mental Health History

15        Petitioner contends that his trial counsel was provided ineffective assistance in

16  failing to persuade the trial court to allow the admission of testimony regarding Kristin's mental

17  health history. Specifically, he alleges:

18        Petitioner was prejudiced by attorney Dennis Owens Higgins for
        allowing the prosecutor and court to suppress Kristin Seishas
19        background of suffering from mental health problems, and two
        suicide attempts relating to paranoia and hallucinations. . . . The
20        said attorney refused to provide case law, status [sic] and leading
        authorities to counter the Court's crucial decision in disallowing
21        any mention of Kristin Seishas mental status, which was relevant
        to the outcome of the trial.
22

23  (Am. Pet. at 58.)

24        Petitioner has failed to demonstrate that his trial counsel's performance in this

25  regard was outside the "wide range of professional assistance." Strickland, 466 U.S. at 689. The

26  record reflects that counsel argued extensively that testimony and other evidence regarding

31

1    Kristen's mental health history was relevant to the issues at petitioner's trial and should have

2    been admitted.  (RT at 34-48.)  The fact that the trial court ruled to the contrary does not

3    demonstrate that counsel was ineffective.  Petitioner has also failed to demonstrate prejudice

4    because he has made no showing that the result of the proceedings would have been different

5    absent counsel's alleged errors.  As explained above, evidence that Kristen had suffered from

6    mental health problems in the past was irrelevant to the issues before the jury at petitioner's trial

7    and was properly excluded.

8              For these reasons, petitioner is not entitled to relief on this claim.

9              c.  Threat to Philip Jones

10             Petitioner claims that his trial counsel rendered ineffective assistance by failing to

11   investigate the circumstances surrounding the threatening note allegedly received by Philip

12   Jones.  (Am. Pet. at 77-78).

13             The state court record reflects that Jones testified he was given a threatening note

14   at his place of employment by someone who told him the note was from petitioner.  (RT at 303-

15   06.)  Jones also testified that he had explained all of the facts surrounding this incident to a

16   prosecution investigator.  (Id. at 304.)  On cross-examination, Jones conceded that the

17   investigator's written report did not include a statement that Jones had said the note was passed

18   on to him by someone else or that it was signed by petitioner.  (Id. at 306.)  Petitioner makes the

19   following claim based upon these facts:

20              Trial counsel was ineffective by failing to object to the
                inadmissible evidence of an alleged threatening note directed to
21              Mr. Jones, who supposedly received it from "somebody" at his
                place of employment, which he claimed was authored by
22              Petitioner.  During Cross-examination trial attorney failed to
                ascertain the name of the person who Mr. Jones claimed gave him
23              the threatening note.  In addition trial counsel refused to interview
                and subpoena the testimony of Investigator Juarez from the District
24              Attorney's Office as a rebuttal witness who would have
                contradicted Mr. Jones testimony of him telling the said
25              investigator that Petitioner's signature was at the bottom of the

26   /////

1   note, which was never conveyed during the interview a couple days
    prior to his trial testimony.  (citation to the record omitted.)
2

3   (Am. Pet. at 77.)

4           Even assuming arguendo that trial counsel failed to fully investigate the facts

5   surrounding Jones' testimony and to present the witness suggested by petitioner and that such

6   failures constituted deficient performance, petitioner has failed to demonstrate prejudice.

7   Petitioner has not made a showing that Jones' testimony regarding his receipt of the note was

8   false in any way.  Further, petitioner's speculation regarding what Investigator Juarez would have

9   testified to is clearly insufficient to establish prejudice.  See Dows v. Wood, 211 F.3d 480, 486

10  (9th Cir. 2000) (ineffective assistance claim based on failure to investigate witness rejected

11  where petitioner did not present an affidavit from witness demonstrating that he would have

12  provided helpful testimony for the defense); Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir.

13  1997) (relief denied on petitioner's ineffective assistance claim where he presented no evidence

14  concerning what counsel would have found had he investigated further, or what lengthier

15  preparation would have accomplished); United States v. Harden, 846 F.2d 1229, 1231-32 (9th

16  Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among

17  other things, there was no evidence in the record that the witness would testify).[9]  Accordingly,

18  petitioner is not entitled to habeas relief on this claim.

19          d.  Failure to Object

20          Petitioner argues that his trial counsel rendered ineffective assistance when he

21  failed to object to or otherwise prevent testimony that Kristan's personnel file was missing from

22  the restaurant and that Ms. Maldonado thought petitioner's uncle had obtained access to her

23  personal information.  (Am. Pet. at 48.)  The record in fact reflects that trial counsel did object to

24  _____

25          [9]  Petitioner's failure to describe with particularity how any prospective witnesses would
    have testified, or to demonstrate that they would have agreed to testify at all at his trial, precludes
26  a finding of ineffective assistance with regard to his claim that his attorneys failed to interview
    and/or call witnesses at trial.

                                        33

1   both of these lines of questioning.  (RT at 83, 146.)  With respect to Kristen's testimony,

2   petitioner's counsel thereafter conducted extensive cross-examination in order to dispel any

3   insinuation that petitioner may have stolen the personnel file.  (Id. at 85-88.)  With respect to Ms.

4   Maldonado's testimony, trial counsel's objection was sustained.  (Id. at 146-47.) Accordingly,

5   petitioner has failed to show that his trial counsel was deficient in responding to the testimony of

6   Kristen and Ms. Maldonado.

7                                CONCLUSION

8           For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

9   application for a writ of habeas corpus be denied.

10          These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12   days after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15   shall be served and filed within ten days after service of the objections.  The parties are advised

16   that failure to file objections within the specified time may waive the right to appeal the District

17   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: June 6, 2008.

19

20   _____

21   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

22   DAD:8
     lopez543.hc

23

24

25

26